UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Raymond G. Craytor,<br><br>Debtor | Case No.:  20-12098-ABA<br><br>Chapter:  7<br><br>Judge:  Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

### I.   INTRODUCTION

Raymond G. Craytor (the "debtor") moved this court to reopen his bankruptcy case, alleging that the Estate of Hattie Maiorano (the "Estate") violated the discharge injunction when it sought a state court order recognizing and enforcing a settlement. The court concludes, reluctantly so, that though the parties settled, the agreement was discharged, and it is too late to do anything about that. Accordingly, the Estate's attempt to enforce the agreement violated the discharge injunction.

### II.   JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought herein is 11 U.S.C. § 524(a). Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

### III.   PROCEDURAL HISTORY

The debtor filed a Motion to Reopen his bankruptcy case to prosecute a "Motion for Damages for Creditor Misconduct" against the Estate, the plaintiff in a state court lawsuit, for violation of the discharge injunction. Doc. Nos. 46, 45. The Estate objected to both motions. Doc. Nos. 47, 48. The court advised that it would hear the Motion to Reopen along with the Motion for Damages. The parties filed briefs in support of their positions. Doc. Nos. 50, 52. The parties

consenting to the court deciding the matters on the papers, the matters are now ripe for determination.

## IV. BACKGROUND

The debtor. through Mark S. Cherry, Esquire, filed a chapter 13 bankruptcy case in February 2020, Bankr. No. 20-12098-ABA, that was voluntarily converted to a no asset chapter 7 case in April 2020.

In March 2020, Hattie Maiorano filed a Motion for Relief from Stay to continue state court litigation against the debtor. Doc. No. 13. Ms. Maiorano had alleged claims of breach of fiduciary duty, conversion, improvident gifting, and unjust enrichment. *Id.*, ex. A. The debtor filed opposition, arguing in part that the bankruptcy court has exclusive jurisdiction over a non-dischargeability determination under section 523(a)(2), (4) or (6). Doc. No. 14. This court ordered as follows:

> The Motion for Relief is granted to the extent to allow the parties to continue the litigation in state court to liquidate the claim. **The Motion for Relief is denied to the extent that the movant asked to enforce any judgment against property of the debtor.**

Doc. No. 15 (emphasis added) (the "Stay Order").

In July 2020, Grayce Watkins, through a power of attorney granted by Ms. Maiorano, timely filed an adversary proceeding against the debtor alleging Ms. Maiorano's claim nondischargeable under section 523(a)(4).[1]

The debtor received a discharge on August 7, 2020. The discharge order was served on Ms. Watkins and Ms. Maiorano's counsel, Michael Hahn of the Simeone firm. Doc. No. 32, p. 3. In part it stated:

> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

Doc. No. 31, p. 1. It also stated that "Examples of debts that are not discharged are:. . . debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case." Doc.

---

[1] The plaintiff also sued TD Bank, seeking to have a mortgage obtained by the debtor to be subordinate to an equitable mortgage she alleged she had on the debtor's residence. These parties later stipulated to dismissal. Adv. Proc. No. 20-1428, Doc. No 18.

No. 31, p. 2. The Bankruptcy Noticing Center certified service of the Order Discharging Debtor on plaintiff's counsel.  Doc. No. 32. The case was closed on September 11, 2020.[2]

Nine months after entry of the Order Discharging Debtor, on May 21, 2021, attorney Bryan Eggert of the Simeone firm, sent to Mark Cherry and Cherry's associate, Steve Burke, copied to Michael Hahn and Dominic Simeone, an email advising that his client had agreed to settlement terms. The email is as follows:

> Mr. Cherry and Mr. Burke:
>
> My client has agreed to the following terms to resolve this matter based upon the terms we discussed this after [sic]. If these terms are agreeable, please send back an email acknowledge [sic] and confirming that your client is agreeable to these terms and I will advise the Court that this matter has been resolved.
>
> The matter shall be settled as follows:
>
> 1. Raymond Craytor shall make a payment of $5,000.00 to the Estate of Hattie Maiorano (to be paid to our office).
>
> 2. Raymond Craytor shall execute a note and second position mortgage in favor of the Estate or its designee against his home in the amount $55,000.00 bearing interest at 4%, annually for a period of ten years, which shall be paid in monthly payments in the amount of $506.07 paid to the Estate or its designee.
>
> 3. Raymond Craytor shall execute a third position non-performing mortgage in the amount of $150,000.00, which does not bear interest and shall be payable on transfer of the property for any reason.
>
> 4. Raymond Craytor shall be permitted to continue to reside in his home and shall be permitted to sell the same, subject to standard protections in the event that Raymond seeks to sell the home short (Subject to an appraisal and approval of the Estate or approval by the Court}[sic]
>
> 5. Raymond Craytor will have the Estate or its designee as the insured on homeowner's insurance and designated payee behind TD Bank.
>
> 6. Raymond Craytor will escrow the insurance and tax monies through his mortgage with TD Bank and ensure that the same are paid.
>
> 7. Any uncured default on the TD Bank mortgage on Raymond Craytor's home will trigger personal liability on Raymond in the amount of $60,000.00, less the payments Raymond has paid to the Estate or its designee.

---

[2] The trustee reopened the case in December 2020, stating that he had been made aware the debtor was an heir to Ms. Maiorano's estate, she having passed away on November 11, 2020. Doc. No. 39. The court granted the motion, but the trustee filed a second Report of No Distribution in July 2021.

8. Any uncured default on any tax or municipal lien shall trigger the personal liability on Raymond Craytor in the amount of $60,000.00 less any payments received.

9. Raymond Craytor shall place facts on the record to allow for a non-dischargeable judgment in the amount of $60,000.00 (capped judgment amount).

10. Raymond Craytor on behalf of himself and his heirs shall disclaim any and all interest in Hattie's Estate.

11. The Estate will transfer any claims it has against Brenda Craytor to Raymond Craytor.

12. The parties shall execute any and all documents necessary to effectuate the terms of this settlement.

Very Truly Yours,
Bryan T. Eggert, Esq.

Doc. No. 45-7 (the "May 2021 Settlement").

A few hours later that same day, Mr. Burke replied:

Mr. Eggert:

I have conferred with Mr. Craytor and he is agreeable to the terms of the settlement as outlined in your email below.

As indicated, please inform the Court that this matter is resolved and copy us on the correspondence. In the event there are any unforeseen issues that need to be brought to our attention over the weekend, please reach out to me via email at spburke@markcherrylaw.com and I will get back to you.

Thank you, Steve Burke

*Id.*, ex. F.

Also on the same day, via letter to the state court, Mr. Eggert reported the matter settled so that the court could remove it from the trial calendar. Doc. No. 45-15, ex. N. He also asked that "the Court schedule the matter for a control date later in June to permit the parties time to draft and execute the necessary paperwork to finalize the agreed[-]upon settlement." *Id.* Mr. Cherry was copied on the letter.

On June 22, 2021, Mr. Cherry docketed the following letter in the adversary proceeding.

> This office represents Raymond Craytor with respect to the Adversary Proceeding filed under Adversary No.: 20-01428, ABA. This matter was settled between the parties several weeks ago. In anticipation of the control date hearing scheduled this afternoon, 6/22/2021, at 2:00 p.m., I have conferred with Michael Hann [sic] of the Law Firm of Simeone & Raynor, Counsel for Hattie Maiorano by her Attorney in Fact, Grayce Watkins.
>
> Mr. Hann [sic] asked me to send a letter informing the Court that he is in the process of drafting and filing a Stipulation of Dismissal With Prejudice as to Raymond Craytor under terms agreed upon between all parties. He represented that he intends to have the Stipulation of Dismissal filed prior to today's hearing, making it unnecessary for the parties to appear unless otherwise directed. However, Mr. Hann [sic] asked me to advise the Court that his firm is severely understaffed today, and he may have difficulty having the Stipulation of Dismissal filed on time. Accordingly, as a courtesy to Mr. Hann [sic], this office has no objection to the control date in this matter being extended and the hearing scheduled for today being continued if Your Honor deems it appropriate under the circumstances. I will follow up with your Law Clerk to inquire as to whether you wish the parties to appear for the hearing today.

Adv. Proc. No. 20-1428-ABA, Doc. No. 19.

This court entered a minute on the docket allowing one week for the stipulation to be filed. 6/22/2021 minute entry. On June 29, 2021, when no stipulation had been filed, the court entered an Order to Show Cause for the plaintiff to show cause why the adversary proceeding should not be dismissed for lack of prosecution. *Id.*, Doc. No. 20. The order ended **"This adversary proceeding will be dismissed with prejudice if stipulation is not filed prior to hearing."** *Id.* (bold in original). The order was served on attorney Michael Hahn at his email address at the Simeone firm. *Id.*

Nobody appearing at the hearing, the court dismissed the adversary with prejudice. *Id.*, Doc. No. 21.

Thereafter, on July 19, 2021, Mr. Hahn asked via email whether Mr. Burke could call him to discuss the Maiorano matter "so we can get this resolved. I would hope to get everything executed this week and payments to begin on August 1." Doc. No. 45-15, ex. N, p. 22. Mr. Burke replied, "This shouldn't be a problem" and asked to speak the following morning. *Id.* Mr. Burke made no reference to the claim needing to be deemed nondischargeable by the bankruptcy court, thus that pushing the settlement would violate the discharge injunction.

The next communication appears not to have occurred until some six months later. On January 25, 2022, Mr. Hahn email Mr. Cherry that "This one kind of feel [sic] through the cracks have [sic] you reviewed the settlement and other documents [sic] I sent you in december [sic]." *Id.*, p. 24. Mr. Cherry referred the message to Mr. Burke who responded the same day "Can you email the Agreement and other docs separately and I'll get it taken care of this week?" *Id.* Again,

Mr. Cherry did not raise the discharge or that any settlement at this point would only be voluntary on the debtor's part.

On February 4, 2022, Mr. Hahn asked Mr. Burke and Mr. Cherry for an update. *Id.*, p. 26. "I need to talk to my client today." *Id.* Mr. Burke replied the same day "Michael: we have Raymond Craytor coming in Tuesday at 3:00 to review and sign. That's the first time that is mutually available." *Id.* Again, Mr. Burke did not indicate that the claim had been discharged.

On February 10, 2022, Mr. Burke wrote to Mr. Hahn "Ray Craytor had to move his appointment to today at 1:00 p.m. from Tuesday. I hope to have the Agreement to you this afternoon. I'll let you know if we run into any issues." *Id.*, p. 29. No mention was made of the claim having been discharged.

According to plaintiff's counsel, Dominic Simeone, in March 2022, debtor's counsel attempted to make changes to the proposed agreement that materially altered the terms of the agreement. Doc. No. 45-15, ex. N, p. 9, ¶ 12. (In the debtor's brief, Mr. Cherry stated that the debtor objected to the $150,000 mortgage on his real property. Doc. No. 50, p. 1. Presumably, Mr. Cherry was not taking the position at that time that continuing settlement negotiations violated the discharge injunction.) Mr. Simeone told debtor's counsel the changes were not acceptable and that he must execute the agreement as drafted. Doc. No. 45-15, ex. N, p. 9, ¶ 12. He further alleged that since July 2022 he had been communicating with Mr. Cherry to resolve the matter but alleged that he believed the debtor had no intention of honoring the agreement and executing the settlement. *Id.*, ¶ 14. Therefore, in October 2022 he filed in the Superior Court of New Jersey, Camden County, a Notice of Motion to Enforce Settlement Agreement asking that the court compel the debtor to execute the settlement agreement. *Id.*, ¶ 16.

Attorney Simeone argues in this court that "The court should take particular judicial notice that the claims against Debtor in the state court matter included fiduciary fraud, and defalcation, both of which are non-dischargeable debt under the Bankruptcy Code; therefore, Respondents were not doing anything in violation of Debtor's discharge in pursuing a debt not dischargeable in bankruptcy." Doc. No. 47, p. 3, ¶ 12. He further "respectfully request[s] this Court consider allowing Respondents to file an Affidavit of Services with the Court as a request to be re-imbursed for time and costs expended to respond to this baseless motion." Doc. No. 48, p. 1, ¶ 3.

Debtor's counsel argued that because the bankruptcy court never approved the settlement, the debt represented by the settlement was discharged. He cited DNJ LBR 7058-1(d) as giving parties seven days to rescind their approval of a settlement.[3]

---

[3] This may not be the intended reading of the rule, which provides interested parties the opportunity to object to a settlement "not later than 7 days after submission of the judgment." DNJ LBR 7058-1(d). Certainly, a party <u>to</u> the settlement would not be objecting. Whether the party could rescind their consent to a settlement is a different issue and not addressed by this local rule.

## V. DISCUSSION

A bankruptcy case may be reopened to administer assets, afford relief to the debtor, or for other cause. 11 U.S.C. § 350(b). Prosecution of a motion for violation of the discharge injunction is cause to reopen a bankruptcy case. *In re Geo Specialty Chemicals Ltd.*, 577 B.R. 142, 179 (Bankr. D.N.J. 2017). Because I determine that Estate of Maiorano violated the discharge injunction, the case should be reopened.

### A. The parties settled

Though as mentioned above, it does not matter whether the parties settled because this court did not determine nondischargeability, it does appear that the parties settled consistent with the Stay Order pursuant to which the court instructed the parties to liquidate the claim in state court. In New Jersey, a settlement can be found even though the parties have not signed a document memorializing the terms.

> "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Zong v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 632 F. App'x 692, 694 (3d Cir. 2015) (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1971)). "Even the failure to execute release documents does not void the original agreement, or render it deficient from the outset. Execution of a release is a mere formality, not essential to formation of the contract of settlement." *Jennings*, 885 A.2d at 489 (citing *Hagrish v. Olson*, 603 A.2d 108 (N.J. Ct. App. Div. 1992) (a settlement agreement which required defendants to pay a stated sum of money and which barred plaintiffs from pursuing an appeal is enforceable even though the plaintiffs failed to execute general releases)); *see also Bistricer v. Bistricer*, 555 A.2d 45 (N.J. Ch. Div. 1987) (holding case was settled at settlement conference where parties agreed on essential terms, notwithstanding plaintiff's numerous objections to the written agreement).

*Ashley v. Metelow*, CV 15-3153 (RMB-AMD), 2020 WL 6537197, at *8 (D.N.J. Nov. 6, 2020).

Thus, debtor's counsel could bind the debtor to the settlement as the parties' emails confirm that they had agreed on the essential terms. Debtor's counsel's letter to this court, docketed in the adversary proceeding, confirmed that. In addition, debtor's counsel later acted in conformance with this impression, telling the Estate's counsel that the debtor would be coming to the counsel's office to sign the formal settlement agreement – all without debtor's counsel ever suggesting that the claim was never determined nondischargeable as a result of the dismissal of the adversary proceeding.

### B. The settlement was discharged

The Estate sought nondischargeability pursuant to section 523(a)(4). Section 523(c) provides that "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, *unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge. . . .*" 11 U.S.C. § 523(c) (emphasis added). Thus, bankruptcy court approval was needed for the debt represented by the settlement to be nondischargeable. *In re Wall-McMahel*, 09-05754-8-JRL, 2010 WL 3744301, at *6 (Bankr. E.D.N.C. Sept. 16, 2010) ("Section 523(c)(1) provides that all debts described in § 523(a)(2)(A) will be automatically discharged unless the creditor to whom the debt is owed obtains a determination by the bankruptcy court that the particular debt is non-dischargeable."); *In re Moran*, 413 B.R. 168, 179 (Bankr. D. Del. 2009) (state court cannot determine nondischargeability under section 523(a)(4) because that jurisdiction is exclusive to the bankruptcy court); *In re Saler*, 205 B.R. 737, 742 (Bankr. E.D. Pa. 1997), *aff'd sub nom. Saler v. Saler*, 217 B.R. 166 (E.D. Pa. 1998) (explaining that a state court judgment cannot render a judgment nondischargeable when the jurisdiction to do so decide resides exclusively with the bankruptcy court).

This holds even if a defendant *settles* a claim that could be nondischargeable under section 523(a)(2), (4) or (6). *In re Saler*, 745 ("[A] debtor may validly settle bankruptcy nondischargeability litigation without following the reaffirmation provisions of section 524(c), and such a settlement will be enforceable *if approved by the bankruptcy court*.") (footnote omitted, emphasis added); *In re Bermingham*, 201 B.R. 808, 817 (Bankr. W.D. Mo. 1996) ("As a result of the bankruptcy discharge, creditors can only enforce these agreements *pursuant to a Bankruptcy Court Judgment* finding that the debt is nondischargeable.") (emphasis added). *See* Collier on Bankruptcy:

> Section 523(c)(1) gives the bankruptcy court exclusive jurisdiction to determine the dischargeability of debts excepted from discharge under paragraph (2), (4) or (6) of section 523(a) and requires a creditor who is owed a debt that may be excepted from discharge under paragraph (a)(2), (4) or (6) to initiate proceedings in the bankruptcy court for an exception to discharge. *If the creditor does not act, the debt is discharged.*

4 Collier on Bankruptcy, ¶ 523.29[1] (16th 2022) (emphasis added). Indeed, *the settlement itself* recognized that a further step was required to prevent discharge of the debtor's personal liability.

Even if the parties could agree to nondischargeability under section 523(a)(4) without a bankruptcy court order, the settlement did not so provide. Rather, it required the debtor to put facts on the record for the bankruptcy court to determine whether the debt was nondischargeable. That the debtor agreed to do this is not tantamount to the debtor admitting he defalcated: that was a decision the settlement reserved for the bankruptcy court. *See In re Grayson*, 199 B.R. 397, 401 (Bankr. W.D. Mo. 1996) (refusing to approve agreed-judgment of nondischargeability "without some evidence that there is a reasonable basis for the entry of same, that the debtor both understands and agrees to the terms, and that the debtor is aware of his or her right to a trial on the

merits."). And the court never decided it because the Estate allowed the adversary proceeding to be dismissed with prejudice.

The Estate's counsel has not alleged that his firm did not receive notice of this court's Order to Show Cause regarding the closing of the adversary proceeding with prejudice. All it needed to do was to appear and ask for more time to get the settlement agreement signed. Instead, it allowed the adversary to be dismissed and then forgot all about the settlement agreement until January 2022 – some six months later. Because the Estate did not return to the bankruptcy court for a finding of nondischargeability, the May 2021 Settlement was discharged. *See In re Mascoll*, 246 B.R. 697 (Bankr. D.D.C. 2000):

> In any event, even if Mascoll or his attorneys had notified the court of the Repayment Agreement, it would not have prevented the discharge of Mascoll's debt to ARC. Again, ARC had only two methods to ensure that its debt would not be discharged, executing a valid reaffirmation agreement or filing a timely § 523(c) complaint.

*Id.*, 701. What is more, while the Estate initially protected itself through the filing of the complaint, that is of no moment, as counsel allowed the complaint to be dismissed with prejudice preventing the court from finding the claim was nondischargeable.

That the Estate may have felt misled by Mr. Craytor and/or his attorney into believing that its claim was enforceable unfortunately is no defense. Equitable estoppel "cannot be created by representations or opinions concerning matters of law." *In re Close*, 93-17145DWS, 2003 WL 22697825, at *7 (Bankr. E.D. Pa. Oct. 29, 2003) (citing *Gabovitz v. State Auto. Ins. Ass'n,* 523 A.2d 403, 406 (Pa. Super. 1987)).

Certainly, as alluded to above, a debtor may voluntarily repay a debt. 11 U.S.C. § 524(f). However, discharge operates as an injunction against the continuation of an action "whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Thus, while Mr. Craytor could have complied with the settlement, the plaintiff could not enforce the settlement against him. *In re Close*, 93-17145DWS, 2003 WL 22697825, at *5–6 (Bankr. E.D. Pa. Oct. 29, 2003). The bankruptcy court has no discretion under the Bankruptcy Code to find otherwise. *In re Munoz*, 287 B.R. 546, 552–53 (B.A.P. 9th Cir. 2002).

To the extent that agreeing to the settlement terms could be deemed a reaffirmation of the debt, the parties did not comply with section 524's reaffirmation requirements, at minimum that it be entered into prior to the granting of discharge. *In re Bennett*, 298 F.3d 1059, 1066–67 (9th Cir. 2002); 11 U.S.C. § 524(c).

Accordingly and unfortunately, this court's hands are tied by the Bankruptcy Code to not conclude other than that the settlement was discharged.

### C. No reconsideration of dismissal with prejudice

To correct its error, the Estate might have sought to vacate the order dismissing the adversary proceeding. A party may seek relief from an order based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1), incorp. in title 11 by Fed. R. Bankr. P. 9024. But even if the Estate's counsel's ignorance of the law could be considered excusable—a stretch considering the May 2021 Settlement Agreement expressly recognized the need to return to this court—a motion made under Rule 60(b)(1) or (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The order dismissing the adversary proceeding was entered July 13, 2021, more than a year ago.

A party may also seek relief from an order based on "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). But the order dismissing the case was not obtained by fraud or misconduct. Debtor's counsel related that the parties had settled and that the Estate's counsel would be filing the settlement agreement after it had been signed. That was true. The dismissal order was entered because the Estate's counsel did not advise the court that he needed more time. That was on him.

The time limitation for moving under Rule 12(b) cannot be extended by the court. Fed. R. Bankr. P. 9006(b)(2) (prohibiting enlargement under Rule 9024 except as provided in the rule). Neither is equitable tolling available.

> The principles of equitable tolling do not extend to garden variety claims of excusable neglect, but require deceit or some other extraordinary grounds for relief. *Id. Accord DeMatthews v. The Hartford Ins. Co.,* 402 Fed. Appx. 686, 689, n. 4 (3d Cir. 2010) (not for publication). Extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices. *DeMatthews,* 402 Fed. Appx. at 689.

*In re G & M Enterprises, Inc.*, 485 B.R. 112, 127 (Bankr. E.D. Pa. 2013). The strict limitations period "is designed to further the fresh start goals of bankruptcy relief by requiring creditors to promptly join their objections to discharge in order that the debtor and other participants in the proceedings may enjoy finality and certainty of relief." *In re Costa*, BAP MB 12-032, 2013 WL 63916, at *4 (B.A.P. 1st Cir. Jan. 3, 2013) (internal quotation omitted).

The Estate has not pled any basis for the court to presume that its failure to respond to the Order to Show Cause was anything but deliberate. That the Estate sat on its rights for a year and a half rebuts any argument that equity should intervene. Thus, the mistake of the Estate's counsel in allowing the adversary proceeding to be dismissed without a non-dischargeability finding cannot now be rectified.

To instead seek reconsideration under Rule 60(b)(6), the "catchall" provision that must be brought "within a reasonable time," Fed. R. Civ. P. 60(c), the plaintiff "must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 393 (1993). But the Estate here is not faultless in the delay. "The grounds for relief . . . , involving straightforward claims of attorney error and strategic

miscalculation, do not satisfy this rigorous standard." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002). In any case, "[t]hese provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." *Id.*

A last ditch possibility is Rule 60(d), which permits a court to: "(1) entertain an independent action to relieves a party from a judgment, order, or proceeding; . . . or (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(1), (3). "However, circumstances warranting relief under this subsection are even more limited than under Rule 60(b)(6)." *In re Rockaway Bedding, Inc.*, 454 B.R. 592, 599 (Bankr. D.N.J. 2011).

Regarding Rule 60(d)(3), setting aside an order for fraud on the court, one judge explained that the rule

> allows a separate, independent action for fraud on the party and fraud on the court. . . . For a claim to qualify as an independent action under Rule 60(d), the party must show that the extraordinary relief is necessary to avoid a sufficiently gross, grave miscarriage of justice. *Id.* The claim of an independent action remains subject to laches and fraud must be pled. *Id.* An independent action can only be permitted in the case of the most egregious conduct and must be supported by clear, unequivocal, and convincing evidence. *Id.* The requirements of a claim of fraud on the court are (1) intentional fraud, (2) by an officer of the court, (3) directed to the court itself, and (4) which deceives the court. *Id.*

*In re G & M Enterprises, Inc.*, 485 B.R. 112, 128–29 (Bankr. E.D. Pa. 2013) (footnotes and internal citation omitted).

In addition,

> [p]arties seeking relief from a judgment through an independent action generally must satisfy the following three elements: "(1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground—such as fraud, accident, or mistake—for the equitable relief." *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 662, 665 (2nd Cir. 1997) . . . .

*In re Mucci*, 488 B.R. 186, 195–96 (Bankr. D.N.M. 2013).

Here, the Estate has not alleged that the debtor's counsel's letter to this court stating that the parties had settled was untrue. Therefore, there is no intentional fraud by an officer of the court that deceived this court. Moreover, it appears that it was the Estate's own fault, neglect, or carelessness that created the situation.

Finally, the Estate may not seek to revoke the debtor's discharge under 11 U.S.C. § 727(d), as more than a year has elapsed since the debtor obtained his discharge. *See* § 727(e)(1). Moreover,

§ 727(d) is not applicable here because there was no fraud—the debtor did not ask for the adversary proceeding to be closed due to the settlement—the creditor allowed that to happen because it did not respond to the court's two Orders to Show Cause.

### D. Attempting to enforce the settlement violated the discharge injunction

Not being able to reconsider the order dismissing the adversary, the issue of the violation of the discharge injunction remains. Section 524 provides:

> (a) A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(1) (West).

Though this court finds that the parties settled the state court matter, all of the debtor's obligations under that settlement were personal obligations: pay $5,000, pay $55,000 over 10 years, place two mortgages on the residence, place facts on the record regarding dischargeability. None of these, survived discharge. Accordingly, the Estate's attempt to enforce the settlement in the state court, and that court's entry of an order, technically violated the discharge injunction.

### E. Damages for violation of the discharge injunction

A bankruptcy court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct, that is, if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). Accordingly, there is no civil contempt if "there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart*, 139 S. Ct. at 1801. A subjective belief that one was complying with an order ordinarily will not insulate them from civil contempt if that belief was objectively unreasonable. *Id.*, at 1802. Civil contempt sanctions may be warranted when a party acts in bad faith. *Id.* On the flip side, a party's good faith may help to determine an appropriate sanction. *Id.*

The contempt power derives from the court injunctive power and section 105. *Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). Thus, "violation of the discharge injunction does not provide a private right of action for damages. . . . Instead, courts use their inherent civil contempt power under section 105 to provide a remedy for violations of the discharge injunction. *Re Andrade*, 13-22850(TBA), 2015 WL 4940047, at *2 (Bankr. D.N.J. Aug. 18, 2015) (internal quotation omitted). "Here, the statutes specifying that a discharge order 'operates as an injunction,' § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart*,

1801. "*Taggart* clarifies that the standard to find civil contempt is objective, but subjective good or bad faith may affect the size of the range of losses attributable to noncompliance with the injunction. Bad faith may widen the range of what is compensatory. . . . Good faith may narrow the range." *In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020). Award of attorneys' fees is one method to remedy the discharge injunction violation. *In re Eastman*, 05-57404-C, 2010 WL 5462469, at *3 (Bankr. W.D. Tex. Dec. 29, 2010); *In re Browne*, 358 B.R. 139, 142 (Bankr. D.N.J. 2006).

Here, to the extent that the Estate's counsel did not understand bankruptcy law, that is insufficient to avoid sanction.

> "As a general rule, ignorance of the law, or mistake as to the law, will not operate as an excuse from a charge of contempt, but it may be a mitigating circumstance, as in a case of honest mistake as to the controlling law." 17 C.J.S. Contempt § 64. This is because the standard for contempt is an objective one. Therefore, a good faith mistake generally does not preclude contempt. *Taggart,* 139 S. Ct. at 1802; *High Tech Nat'l, LLC v. Charles Stead*, Case No. MC 19-191, 2020 WL 5076796, at *3 (E.D. Pa. Aug. 27, 2020).

*In re Paventy*, 2:14-BK-29018, 2022 WL 16545514, at *13 (B.A.P. 9th Cir. Oct. 28, 2022).

That the Estate's counsel may not practice bankruptcy law also does not excuse it. As one judge stated:

> I recognize that the creditor was represented by in-house counsel who may not have been fully versed in bankruptcy law and procedure. Nevertheless, it would be a dangerous precedent for me to apply a different standard to non-bankruptcy attorneys than I would apply to the conduct of experienced bankruptcy practitioners. A bankruptcy lawyer would never be justified in allowing a deadline to pass simply because he expected the Debtor to reaffirm the debt or believed that an oral agreement existed with the Debtor. Instead, the diligent creditor's attorney would and must file a motion seeking to extend the deadline pending the consummation of the negotiated agreement.

*In re Yohler*, 127 B.R. 492, 494 (Bankr. S.D. Fla. 1991). *See In re Valentine*, 611 B.R. 622, 643 (Bankr. E.D. Mo. 2020) (stating in automatic stay violation case "The old adage 'ignorance of the law is not a defense' wins the day.").

The order granting relief from stay expressly limited the parties to liquidating the claim, prohibiting enforcing the judgment against property of the debtor. The Estate and its counsel were later served with the discharge order that warned that one may not attempt to collect a discharged debt from a debtor personally and that violation of this could result in being required to pay damages and attorney's fees. *In re Moss*, 618 B.R. 123, 130 (Bankr. D.N.J. 2020) (stating that language of the discharge order is clear). It also stated that debts that are not discharged are "debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case." The bankruptcy court never decided that this debt was not discharged.

Accordingly, there was no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

As to the sanction for this violation, the court is mindful that while civil contempt may include "relatively mild non-compensatory fines tailored to rule enforcement," *In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020) (internal quotation omitted), "the degree of sanctions other than compensation is limited to the least possible exercise of power adequate to the end of preventing repetition." *Id.* (citing *Taggart*, 139 S. Ct. at 1802). Given this court's ruling regarding the discharge, it doubts that the Estate will repeat the violation.

Accordingly, it will set a hearing for determination of the damages, i.e., the reasonable attorney's fees and costs to debtor for having counsel appear at the state court hearing and for prosecuting this matter. *In re Trinidad*, 21-03022 (ESL), 2022 WL 3363888, at *14 (Bankr. D.P.R. Aug. 12, 2022); *In re Moss*, 130 (stating that upon finding contempt, court may issue sanctions such as costs, compensatory damages, and attorney's fees); *In re Eastman*, 05-57404-C, 2010 WL 5462469, at *3 (Bankr. W.D. Tex. Dec. 29, 2010) (recognizing attorney's fees incurred to prosecute discharge injunction as actual damages).

In addition to minding the Supreme Court's directive that sanctions be limited to the minimum necessary to prevent repetition, in determining whether the debtor's attorney's fees are reasonable the court will also consider whether the debtor's attorney had the opportunity to, and did, mitigate, the damages. *In re Schmelcher*, 11-61607, 2015 WL 639076, at *5 n. 5 (Bankr. N.D.N.Y. Feb. 13, 2015), *order aff'd, appeal dismissed sub nom. Schmelcher v. Cnty. of Oneida*, 6:15-CV-00245 (MAD), 2016 WL 297713 (N.D.N.Y. Jan. 22, 2016) (warning that attorneys' fees would not be awarded "carte blanche" and that "bankruptcy courts frequently refuse to award the total attorneys' fees requested for a violation of the discharge injunction when there is evidence that a debtor and/or his counsel could have mitigated damages by attempting to resolve the matter prior to litigation but did not do so."); *In re Parker*, 576 B.R. 1, 14 (Bankr. N.D. Cal. 2017) (stating that court would consider mitigation efforts if and when it needed to determine damages); *In re Robb*, 399 B.R. 171, 176 n. 3 (Bankr. N.D.W. Va. 2008) (noting that "there is no 'blanket rule' that all debtors must first notify creditors of stay or discharge violations before filing a cause of action, but 'for inadvertent violations, such a requirement serves to notify the creditor of its improper behavior and serves to prevent needless litigation.'" (quoting *Price v. Pediatric Academic Assoc., Inc.,* 175 B.R. 219 (S.D. Ohio 1994)).

To be sure, this entire matter stinks. Could debtor's attorney have saved the expense of appearing in the state court enforcement matter had he earlier objected to the Estate pressing to have the debtor sign the settlement agreement after the adversary proceeding had been dismissed, or by informing plaintiff's attorney that the state court action violated the discharge injunction, or by immediately filing the motion here upon notice of the state court action? *See In re Haltermon*, 592 B.R. 311, 322 (Bankr. S.D. Ohio 2018) (suggesting that bankruptcy attorney should have alerted that violated discharge injunction, but other counsel could have alerted sooner that claim sought to be enforced arose prepetition); *In re Lewis*, 570 B.R. 195, 202 (Bankr. E.D.N.C. 2017) (finding the failure of the creditors to "communicate properly" with the debtor "precluded any mitigation of time and expenses spent on rectifying the situation."). Was debtor's counsel

complicit in expending time and expenses advancing an otherwise unenforceable settlement? We'll see.

### VI. CONCLUSION

Based on the foregoing, the court will grant the motion to reopen the bankruptcy case and the motion seeking damages for violation of the discharge injunction. The debtor is instructed to file a certification detailing its reasonable attorney fees.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

<u>/s/ Andrew B. Altenburg, Jr.</u>
United States Bankruptcy Judge

Dated: February 22, 2023