UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Raymond G. Craytor,<br><br>　　　　　　Debtor | Case No.:　　20-12098-ABA<br><br>Chapter:　　7<br><br>Judge:　　Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

### I.  INTRODUCTION

This court previously held that the Estate of Hattie Maiorano (the "Estate")[1] violated the discharge injunction when it sought a state court order recognizing and enforcing a settlement. The court now determines that the Estate should be sanctioned in the amount of $1,000, not the outrageous $28,448 requested by the debtor and/or his counsel.

### II.  JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought herein is 11 U.S.C. § 524(a). Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

### III. PROCEDURAL BACKGROUND

On February 22, 2023, the court entered an Opinion and Order reopening this case and finding that the Estate had violated the discharge injunction. It forbade the Estate from enforcing the settlement. Doc. Nos. 55, 56. As a possible additional sanction, the court directed debtor's counsel to file a certification detailing his *reasonable* attorney fees and/or costs. Doc. No. 56. Counsel's certification of fees seeks $28,448 for 81.28 hours spent on the case, at $350 per hour.

---

[1] For the ease of the court, it will refer to the plaintiff solely as the Estate, even though at times it was Hattie Maiorano herself, or Grayce Watkins acting on her behalf through a power of attorney and later as executrix of Ms. Maiorano's probate estate.

Doc. No. 61, p. 2. Counsel was admitted to practice in 1986. *Id.* The Estate then filed a Brief in Opposition. Doc. No. 63, and debtor's counsel filed a reply. Doc. No. 64.

### IV. FACTS

The debtor filed a chapter 13 bankruptcy case in February 2020, Bankr. No. 20-12098-ABA, that was later voluntarily converted to a no asset chapter 7 case. In March 2020, the court granted the Motion for Relief from Stay filed by the Estate solely to liquidate its claim against the debtor in state court. Doc. No. 13. In July 2020, the Estate timely filed an adversary proceeding against the debtor alleging its claim was nondischargeable under section 523(a)(4).

The Estate reported the matter settled to the state court in May 2021. In June 2021, the debtor reported the matter settled with respect to the adversary proceeding in this court. When no stipulation of settlement was filed here, this court entered an Order to Show Cause why the adversary proceeding should not be dismissed for lack of prosecution. The Estate not appearing at the hearing, on July 13, 2021 the court dismissed the adversary with prejudice. The debtor had received a discharge on August 7, 2020, therefore, as explained in its prior opinion, *In re Craytor*, 20-12098-ABA, 2023 WL 2167460, at *7 (Bankr. D.N.J. Feb. 22, 2023), the Estate's settled claim was discharged.

Despite this, the Estate continued to ask the debtor to sign a settlement document consistent with the terms that had been agreed upon through counsel. The parties communicated back and forth until, in March 2022, the debtor attempted to make changes to the proposed agreement.

In October 2022, the Estate ultimately filed in state court a Motion to Enforce Settlement Agreement, contending that the parties had settled in May 2021. Doc. No. 45-15, ex. N. The debtor objected to the Estate's motion, arguing that "[t]here were no Orders in the Bankruptcy Court that would Exempt Plaintiffs [sic] Claims from discharge." Doc. No. 45-16, ex. O (the "Opposition"), p. 3 (capitalizations in original). "Therefore, it is clear that the alleged claims of Plaintiff were properly discharged in Bankruptcy and that the Present Motion is in Violation of the United States Bankruptcy Code Section 524." *Id.* "The Defendant takes the position, and it is clear, that there is no settlement for this Court to enforce, as Plaintiffs [sic] Adversary Proceeding was Dismissed, with prejudice, and any and all claims of the Plaintiff were discharged in Raymond Craytor's Bankruptcy discharge [sic] on August 7, 2020." *Id.*, pp. 3-4. Counsel spent 14.25 hours drafting and filing this opposition. Doc. No. 61, p. 3 (10/7/2022-11/15/2022 entries). At a hearing held December 2, 2022, the state court enforced the parties' settlement.

While he researched and drafted a Motion for Reconsideration to file in the state court, debtor's counsel also began working on a "Motion for Damages for Creditor Misconduct" to file in the bankruptcy case. Doc. No. 61, pp. 3-4. The Motion for Reconsideration somehow took him 15.50 hours to write and file. *See id.*, p. 4 (12/9/2022 and 12/30/2022 entries).[2] The Motion for

---

[2] The court assumes that a December 30 entry, "filing misc. correspondence to Judge Schweitzer," taking 0.50 hours, was actually the filing of the Motion for Reconsideration, as such a motion must be filed no later than 20 days after service of the judgment or order sought to be reconsidered, i.e., within approximately 4 weeks, and the next to last

Damages took debtor's counsel a whopping 36 hours to research and write, and a staggering 3.75 hours to e-file. Doc. No. 61, pp. 3-4 (time entries 11/28/2022-12/19/2022).[3] This despite the 5-page brief in support of the Motion for Damages being nearly identical to the 4-page state court Opposition brief, the one he had spent 14.25 hours researching and writing. *See* Doc. No. 61, p. 3 (10/27/2022-11/15/2022 entries). Both the Motion for Damages and the Opposition are padded with a full quotation of the paragraphs between section 523(a)(1) and (a)(18)[4] that counsel then states *do not apply* in this proceeding, before setting out in full the three provisions that he asserted did, 523(a)(2), (4), and (6) (though only 523(a)(4) did), while incorrectly citing them as 523(c)(2), 523(c)(4), and 523(c)(6). Doc. No. 45, pp. 4-6; Doc. No. 45-16, pp. 6-7. The Opposition brief also refers to Bankruptcy Code sections 424(a)(1), 525(a)(2), and 326(a)(6), none of which exist, and cites two cases that did nothing to support debtor's argument. Doc. No. 45-16, p. 5, 7-8.[5] The Damages brief cites no cases and is further padded by a half-page quotation of paragraphs 1-3 of section 524(a). Doc. No. 45-1, p. 5.

Despite this enormous amount of research time, debtor's counsel did not realize that he first needed to ask to reopen the bankruptcy case. (Debtor's counsel also did not include a proposed order or Certificate of Service with the Motion for Damages. Doc. No. 45.) The ensuing Motion to Reopen consisted solely of a 2-page attorney certification of 12 facts followed by a request to reopen the case yet took an incredible 15.28 hours to draft and file. Doc. No. 46-1; Doc. No. 61, p. 4 (time entries 12/19/2022-12/23/2022).[6]

The Estate objected to both the Motion for Damages and the Motion to Reopen. Doc. Nos. 47, 48. The court advised that it would hear the two motions together. On January 12, 2023, the court also asked the parties to brief whether email messages exchanged on May 21, 2021 did not affect a settlement between the parties (the "May 2021 brief"). Doc. No. 65. On January 19, 2023, debtor's counsel left a 43-second voice message[7] with chambers to enquire whether this meant just facts, or legal analysis, too. Counsel did not bill for this, but did improperly bill at his rate for half an hour the next week when his paralegal followed up by email and phone. Doc. No. 61, p. 4 (01/24/2023 time entry).

---

time entry regarding the reconsideration motion, on December 20, involved continued drafting. N.J. Ct. R. R. 4:49-1, 49-2. What debtor's counsel filed as his Motion for Reconsideration is not in the record.

[3] There are two December 19 time entries for filing the Motion for Damages, one for 3 hours, the other for 0.75 hours. The debtor only has one filing that day. The first December 19 entry states that it concerned filing a Motion to Reopen the bankruptcy case, but that motion was not filed until December 23.

[4] Oddly, he did not include section 523(a)(19), added to the Code in 2002.

[5] One concerned reaffirmation, the other just provided facts in a nondischargeability case with no connection to the issues in this proceeding.

[6] Debtor's counsel's time entries are confusing at times. Though he filed the Motion for Damages on December 19 without a Motion to Reopen, his time entries for November 28, December 8, and December 19 reference a Motion to Reopen the case.

[7] The court's voice messages are saved as *.wav files.

Debtor's counsel's May 2021 brief, four pages long and with no citations to case law, argued that any settlement had been discharged as the Estate had not returned to this court for a nondischargeability determination. Doc. No. 49. It took counsel four hours to draft, even though this was the same argument the debtor had made in the state court a month prior. Doc. No. 45-16, Doc. No. 61, p. 4 (1/26/2023 and 2/3/2023 entries). It also took debtor's counsel an hour to locate the subject May 21, 2021 email and "prior settlement discussion" even though he had attached it all to his Motion for Sanctions. Doc. No. 45, ex. F; Doc. No. 61, p. 4 (01/16/2023 time entry).

## V. DISCUSSION

This court stated in its earlier opinion that it

> is mindful that while civil contempt may include "relatively mild non-compensatory fines tailored to rule enforcement," *In re LeGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020) (internal quotation omitted), "the degree of sanctions other than compensation is limited to the least possible exercise of power adequate to the end of preventing repetition." *Id.* (citing *Taggart*, 139 S. Ct. at 1802).

*In re Craytor*, 20-12098-ABA, 2023 WL 2167460, at *10 (Bankr. D.N.J. Feb. 22, 2023). It concluded "Given this court's ruling regarding the discharge, it doubts that the Estate will repeat the violation." *Id.* That is the first reason the court will not award $28,448 in sanctions.

Indeed, sanctions under this court's civil contempt powers and section 105(a) "'must either be compensatory *or* designed to coerce compliance.'" *In re Mooney*, 532 B.R. 313, 327 (Bankr. D. Idaho 2015) (quoting *Dyer,* 322 F.3d 1178, 1192 (9th Cir. 2003) (emphasis added). *See In re Rhodes*, 563 B.R. 380, 387 (Bankr. M.D. Fla. 2017) (citing *In re Ocean Warrior,* 835 F.3d 1310, 1317 (11th Cir. 2016) (same)). Thus, this court could not order compensatory damages at all.

The second reason is that, despite the court's warning, debtor's counsel did not mitigate damages. *See In re Craytor*, 2023 WL 2167460 (Bankr. D.N.J. Feb. 22, 2023):

> In addition to minding the Supreme Court's directive that sanctions be limited to the minimum necessary to prevent repetition, in determining whether the debtor's attorney's fees are reasonable the court will also consider whether the debtor's attorney had the opportunity to, and did, mitigate, the damages.

*Id.*, at *11.

Debtor's counsel asserts that he did mitigate damages in that he called Estate's counsel "on numerous occasions," prior to and after the state court matter was filed to resolve the matter, but that the Estate would not accept anything but the original settlement terms. Doc. No. 64. But what this court was referring to was debtor's counsel's opportunity to stop the settlement negotiations once any settlement was discharged—instead, debtor's counsel reports that he continued to try to settle the matter, even though no settlement could be enforced against his client. In its opinion on the Motion for Sanctions, this court repeatedly admonished debtor's counsel for failing to mitigate:

referring to communications between counsel on July 19, 2021, the court wrote "Mr. Burke made no reference [to the Estate's counsel] to the claim needing to be deemed nondischargeable by the bankruptcy court, thus that pushing the settlement would violate the discharge injunction." *In re Craytor*, 2023 WL 2167460, at *4. Regarding communications on February 4, 2022: "Again, Mr. Burke did not indicate that the claim had been discharged." *Id.* And communications on February 10, 2022: "No mention was made of the claim having been discharged." *Id.* Keeping in mind the Supreme Court's "fair ground of doubt standard," the debtor's actions could have injected some doubt as to whether continuing to pursue settlement violated the discharge order, leading the Estate to believe that seeking to judicially enforce the settlement was not inappropriate. *See Taggart v. Lorenzen*, 204 L. Ed. 2d 129 (June 3, 2019).

Debtor's counsel could have put an end to the Estate's action any time after the July 2021 closing of the adversary proceeding with prejudice. That it encouraged the Estate after that, without informing it that the settlement would only be voluntary on the debtor's behalf at that point, supported the Estate's belief that it could enforce a settlement. That the debtor did not seek sanctions until after the Estate prevailed in the state court, then, is a self-imposed wound that the debtor will have to mend mostly on his own. *See In re Luera*, No. 17-70478, 2022 WL 17730898, at *7 (Bankr. S.D. Tex. Dec. 16, 2022) (holding that prejudice to debtors that waited two years to object to late-amended claim was "self-imposed" since it could have been avoided had debtors acted timely to deal with the amended claim.).

Debtor's counsel instead asserts that it is the Estate that failed to mitigate by pursuing its motion in state court after the debtor (finally) "spelled out the Bankruptcy violation" through his opposition. *Id.*[8] First, the debtor's Opposition brief is not a model of clarity. Even the state court judge thought he was wrong.

Once the debtor lost in state court, he should have either pursued appeal there or come back to this court. There was no need to litigate on two fronts. *See In re G-I Holdings, Inc.*, 580 B.R. 388, 425 (Bankr. D.N.J. 2018) ("A debtor seeking to assert a violation of the discharge injunction may *either* assert the discharge as an affirmative defense ... in state court *or* bring an [a]dversary [c]omplaint in bankruptcy court to enforce the statutory injunction under § 524(a)(2) of the Code.") (internal quotation omitted).

Instead, counsel spent 15.50 hours between December 9 and 20 reviewing files, and drafting, reviewing and editing a Motion to Reconsider to file in the state court. Counsel even spent an hour on February 24 preparing for oral argument in the state court, even though this court had entered its opinion in his client's favor on February 22.

Alternatively, since debtor's counsel knew (or should have known), when the adversary proceeding was dismissed with prejudice and the debtor received a discharge that the Estate's claim had been discharged, when the Estate filed its motion to enforce settlement he could have immediately moved this court to reopen the case based on the discharge injunction.

---

[8] The only such indication in the billing records is an entry regarding sending an email on December 15, 2022 to the Estate's counsel advising that its motion to enforce was "in violation of ESBC section 534." Doc. No. 61, p. 3. The court does not know what ESBC refers to, and the discharge injunction is contained in section 524, not 534, of the Bankruptcy Code. Surprisingly, debtor's counsel did not bill for this notice.

The third reason the court will not award $28,448 in sanctions is that it charged debtor's counsel with submitting *reasonable* attorney fees and costs. This court will not sanction another party with this extreme amount of fees. Debtor's counsel spent 12.25 hours drafting his response to the state court action, 36 on the Motion for Damages (plus 3.75 for filing it), 3.25 on the Motion to Reopen, and 15.50 on the state court Motion to Reconsider. Even ignoring that the briefs were near identical, this is an extraordinary amount of time to spend on any one brief. Certainly, needing to do the research all over again for the filings in bankruptcy court was not necessary. One might also expect much stronger arguments, citation to relevant authorities, and no typos, for the amount of time spent. The court is at a loss as to how an attorney, practicing for 37 years, would need to put in this amount of work to enforce the discharge entered in every successful consumer bankruptcy case. The simplicity of counsel's briefs support that the court was not faced with an unusual issue, therefore this court cannot fathom what took counsel so long.[9] *See In re Morgenstern*, 542 B.R. 650, 661 (Bankr. D.N.H. 2015), *aff'd sub nom. White v. Gordon*, 558 B.R. 15 (D.N.H. 2016) (discounting fee award by two-thirds due to "overworked" tasks, citing 40 hours spent on drafting four count complaint "where most of the factual allegations were drawn from official documents or the Court's docket," 41 hours on pleadings involving simple issues, and 30 hours on a joint pretrial memo that dealt with the same facts and issues raised in earlier pleadings).

Other time entries are questionable, too. On January 16, debtor's counsel spent an hour "[r]eviewing files and finding prior settlement discussion between [counsel] in an email from May 21st, 2021." Doc. No. 61, p. 4. But debtor's counsel had attached the May 21 email chain to his Motion for Damages, Doc. No. 45-8, ex. G, and the Estate's counsel had attached it in his opposition to the Motion to Reopen, Doc. NO. 47-1, ex. A, filed just six days prior. Thus, the court is puzzled as to why there was a need for debtor's counsel to "find" this discussion.

More concerning is the January 24 entry, "Discussion with Court over specifics concerning brief filing for case." Debtor's counsel seeks $175 for his half hour spent on this item. But as related above, the chamber's records show that counsel left a message with chambers on January 19. On January 24, counsel's paralegal, not counsel, left a voice mail and sent an email to chambers regarding this brief. Counsel should not be billing at his rate work done by his paralegal. And if counsel just mixed up the dates, the court questions his billing for half an hour for something that took less than a minute. Counsel should not bill for this at all, since the "discussion" consisted of asking judge's chambers what was meant by a "brief" in asking the parties to brief whether the May 2021 email constituted a settlement – certainly something a seasoned attorney should know. Finally, the resultant three-page brief, that took counsel four hours to draft, missed the point as it contained exactly zero citations to case law and focused on the need for approval of the settlement in this court rather than whether the parties had settled.

### VI. CONCLUSION

Spending two months litigating the Estate's motion in state court, then seeking sanctions in this court, and then continuing that state court litigation with a motion for reconsideration, was

---

[9] Counsel did attach 258 pages of exhibits to the Motion for Damages, but the majority were documents filed in the state court matter or the adversary proceeding here.

not reasonable. Spending 67 hours researching and writing just five submissions shows a staggering lack of billing judgment. The court will not shift this fee burden to the Estate.

That said, had the debtor raised the discharge timely, considering the Estate's fierce opposition, he likely still would have had to file a motion in this court to convince the Estate to stop. A basic motion in this court is usually billed at $500. This court additionally asked the parties to file briefs, but counsel's brief was only three pages long and did not address the question asked.

In light of the debtor's inflated time entries and failure to mitigate, and the court's confidence that the Estate will not continue to try to enforce the settlement, the court will order sanctions solely in the amount of $1,000. Counsel can look to his client, who was complicit in leading the Estate on, for the remainder of his bill.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

<u>/s/ Andrew B. Altenburg, Jr.</u>
United States Bankruptcy Judge

Dated: March 23, 2023